**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-5144

ALBERT T. CARLISLE,
　　　　　　　　　Appellant

v.

MATSON LUMBER COMPANY; MATSON HARDWOODS, INC.

Appeal from the United States District Court
for the Western District of Pennsylvania
(D. C. Civil No. 04-cv-00284E)
District Judge: Hon. Gary L. Lancaster

Submitted Under Third Circuit L.A.R. 34.1(a)
May 19, 2006

Before: RENDELL and VAN ANTWERPEN, Circuit Judges,
and ACKERMAN, District Judge[*]

(Filed: June 2, 2006)

OPINION OF THE COURT

---

[*]　The Honorable Harold A. Ackerman, Senior District Judge for the District of New Jersey, sitting by designation.

ACKERMAN, <u>District Judge</u>.

Appellant Albert T. Carlisle ("Carlisle") is the record owner of real property formerly known as "Clough Farm." In 1968, the timber rights for the Clough Farm property were split from the ownership of the land, and transferred separately. Carlisle purchased the Clough Farm property (without any timber rights, which were explicitly excluded from the sale) in 1970. In 2004, Carlisle brought a diversity action against defendants Matson Lumber Company and Matson Hardwoods, Inc. (collectively, "Matson"), entities that claim ownership of certain rights to the timber on the Clough Farm. Carlisle's complaint sought, *inter alia*, a declaratory judgment asserting that Carlisle owns the Clough Farm property in fee simple absolute, effectively ousting Matson of any interest in the Clough Farm timber. Additionally, Carlisle's complaint sought to nullify a quitclaim deed issued in 2003 by a prior owner of the Clough Farm property, purporting to transfer all timber rights in the property to Matson ("the Quitclaim Deed").

Matson filed a motion for summary judgment, arguing, *inter alia*, that the bulk of Carlisle's present claims were barred by *res judicata*, pursuant to a prior litigation commenced by Carlisle in 1995 which resolved ownership of the Clough Farm timber rights as between Carlisle and Matson. The District Court agreed, and, following an evidentiary hearing to assess the value of the remaining claim regarding the Quitclaim Deed, dismissed that claim as insufficient to satisfy the amount in controversy requirement for diversity jurisdiction. Carlisle now appeals the District Court's grant of

summary judgment dismissing the bulk of his claims on *res judicata* grounds, and the District Court's decision on reconsideration dismissing the remaining claim for failure to satisfy the amount in controversy requirement.

I.

Prior to 1968, Clough Farm was owned by Marion Kinkead. In 1968, Kinkead entered into two agreements, both dated April 1, 1968, with Fisher & Young, Inc. ("Fisher & Young"), for the sale of all of the land and premises of Clough Farm, excluding the trees and timber on the property. The first agreement, which was subsequently recorded in the Office of the Recorder of Deeds, conveyed to Fisher & Young all of the land and premises, excepting trees and timber rights, which were reserved and retained by Marion Kinkead. The second agreement, which was never recorded, conveyed to Fisher & Young the right to cut and remove existing trees exceeding 12" in diameter until April 1, 1978 (the "1968 Unrecorded Agreement"). Pursuant to the 1968 Unrecorded Agreement, on April 1, 1978, the timber rights granted by the Agreement would expire and all timber rights would "revert to the owner of the land."

On January 9, 1970, Fisher & Young sold to Appellant Carlisle all of the Clough Farm land and premises, with the exception of the trees and timber rights. Three years later, on April 20, 1973, Kinkead conveyed to Fisher & Young by Timber Deed the rights to all timber and trees with trunks exceeding 12" in diameter. This Timber Deed

3

memorialized and explicitly referenced the prior 1968 Unrecorded Agreement between Kinkead and Fisher & Young, which first established Fisher & Young's right to harvest certain trees from the Clough Farm property.  This Timber Deed was explicitly subject to the same conditions as the referenced 1968 Unrecorded Agreement.  Thus, the Timber Deed was arguably subject to the same condition contained in the 1968 Unrecorded Agreement that the timber rights conveyed therein would terminate on April 1, 1978, and revert to the "owner of the land."

Despite an apparent reversionary interest in the timber on the Clough Farm property, it appears that Marion Kinkead and her estate never recognized rights to the Clough Farm timber inasmuch as the timber rights were not included in the filed inventory of the estate upon Marion Kinkead's death in 1988.  However, in 2003, Kinkead's executrix issued a quitclaim deed transferring to Matson Lumber Company ("Matson Lumber"), the successor to Fisher & Young,[1] all of the trees and timber standing or fallen on the Clough Farm (the "Quitclaim Deed").  Presumably, the executrix's authority to make the Quitclaim Deed was premised on the theory that the Clough Farm timber rights had vested in Mrs. Kinkead on April 1, 1978, by virtue of the 1968 Unrecorded Agreement or the recorded 1973 Timber Deed.

In 1995 Carlisle commenced an action against Matson Lumber Company and Matson Hardwoods, Inc. (again, collectively, "Matson") in the United States District

---

[1] Fisher & Young went through various corporate acquisitions and mergers, eventually emerging as Matson Lumber Company in 1995.

Court for the Western District of Pennsylvania ("*Carlisle I*", at No. 95-0376). That action asserted various breach of contract and trespass claims against Matson for alleged failure to abide by the terms of agreement of sale of the Clough Farm property. In that action, Carlisle conceded that Matson owned timber rights to the trees and timber on the Clough Farm property, but alleged that Matson was performing its cutting activities in violation of the agreement of sale. Nevertheless, that action also sought a declaratory judgment "setting forth the scope of Matson's timber rights under the agreement of sale, thus clarifying the parties' legal relations and respective rights." (App. at 93).

The action proceeded to a jury trial, and resulted in a jury verdict finding that the parties intended to grant Matson the right to harvest those trees that existed on the property in 1969. Matson, claiming rights to all timber, appealed to this Court, which affirmed the verdict, holding that the jury established that Matson did not have timber rights in perpetuity; rather, Matson's timber rights were limited to the harvest of only those trees in existence on the property in 1969. The assumption made by both the District Court and the Third Circuit in *Carlisle I* was that Carlisle had the right, under the agreement of sale, to harvest the trees planted or sprouted on the property after 1969.

Carlisle acquired new counsel and filed a subsequent action in Pennsylvania state court ("*Carlisle II*") which re-asserted certain claims that Carlisle had voluntarily withdrawn in *Carlisle I*. That action is still pending and has not reached final judgment. However, Matson moved for summary judgment dismissing certain of those claims, on the basis of *res judicata*, and was partially successful. (App. at 199-208.) In particular,

5

the state court ruled that plaintiff could not argue in the state case that Matson possessed only the right to harvest trees that were of a certain diameter as of 1969, because Carlisle had made contrary arguments in the federal action (*Carlisle I*), and had not advanced any such argument, even as an alternative, in that prior federal action.  In addition, the state court found that any claims that arose before the close of evidence in the federal case "could have been advanced in federal district court" and to the extent they were not, they were now barred by *res judicata*.

Carlisle commenced the instant action on September 28, 2004, ostensibly to challenge the validity of the May 22, 2003 Quitclaim Deed issued by Mrs. Kinkead's executrix, purporting to grant the Clough Farm timber rights to Matson.  The instant action sought: 1) declaratory relief stating that Carlisle owns the Clough Farm property in fee simple absolute, and that Matson has no right or interest in the property; 2) injunctive relief preventing Matson from asserting any claim to the Clough Farm property adverse to Carlisle's interest; and 3) a declaration that the May 22, 2003 Quitclaim Deed is null and void.

Matson filed a summary judgment motion seeking dismissal of Carlisle's complaint on the grounds that the claims therein are barred by the doctrine of *res judicata*.[2]  The District Court granted Matson's motion in part in an Order dated May 9, 2005, dismissing the claims relating to the determination of ownership of the Clough

---

[2] Carlisle also sought summary judgment on a procedural point, which was not granted.

Farm property, with the exception of the claims relating to the 2003 Quitclaim Deed. Additionally, the District Court determined that, due to the dismissal of the bulk of plaintiff's claims, it was unclear whether the remaining claims regarding the Quitclaim Deed would satisfy the amount in controversy prerequisite to diversity jurisdiction. Accordingly, the District Court ordered the parties to participate in an evidentiary hearing to submit evidence regarding the value of the remaining claims to determine the valid amount in controversy. The evidence presented by Carlisle's valuation expert indicated that the post-1969 timber at issue under the Quitclaim Deed claims had a present value of approximately $4,200.

Carlisle filed a Motion for Reconsideration on September 29, 2005. The District Court denied the Motion for Reconsideration on October 28, 2005. As part of the Order denying the Motion for Reconsideration, the District Court held that it lacked jurisdiction over the only remaining claim in the action, the Quitclaim Deed claim, based on the evidence presented at the evidentiary hearing regarding the value of such claim. The District Court found that, because the bulk of Carlisle's claims were invalid as barred by *res judicata*, Carlisle had invoked diversity jurisdiction in bad faith, inflating its Complaint with non-justiciable claims in an effort to fulfill the amount in controversy requirement for diversity jurisdiction. Consequently, the District Court dismissed the action for lack of jurisdiction. Carlisle now brings this appeal, which we review pursuant to our authority under 28 U.S.C. § 1291.

II.

Carlisle appeals the District Court's grant of summary judgment dismissing the bulk of the claims as barred by *res judicata*. We review a district court's grant of summary judgment de novo, using the same standard that governs the district court's review of a motion for summary judgment. *Mass. Sch. of Law v. ABA*, 107 F.3d 1026, 1032 (3d Cir. 1997).

In order for *res judicata* to apply, "it is necessary that: 1) there be a final judgment on the merits; 2) the party against whom the bar is asserted is the same; and 3) the subsequent suit is based upon the same cause of action." *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). Significantly, where these elements are found, a plaintiff is barred from relitigating not only those claims which were, in fact, actually decided, but also those that the parties might have asserted, but did not, in the prior action. *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990).

In this case, there is no dispute that the first two elements of the test for application of *res judicata* have been met: the existence of a final judgment and the identity of parties. However, Carlisle vigorously disputes whether this action is "based upon the same cause of action" as *Carlisle I*. Carlisle argues that this action is different from *Carlisle I* because the instant action is premised upon the 2003 Quitclaim Deed, which did not exist at the time *Carlisle I* was litigated, and thus, this action could not have been brought as part of *Carlisle I*. This argument is unavailing because the instant action seeks greater and more extensive relief than simply the nullification of the Quitclaim Deed.

8

Carlisle's main claim for relief is an order stating that he is the fee simple owner of all of the land and timber on the Clough Farm property. As a result, this action implicates the same issues and causes of action that were litigated to conclusion in *Carlisle I*, namely the ownership of the trees and timber on the Clough Farm property.

Carlisle argues that, to the extent that the claims in this action are premised on the operation of the 1968 Unrecorded Agreement and the 1973 Timber Deed, such claims could not have been brought in *Carlisle I* because Carlisle had no notice of the existence of either document at the time that action was filed. The District Court rejected such reasoning, concluding that while there is no evidence that Carlisle had any actual notice of the 1968 Unrecorded Agreement at the time of filing of *Carlisle I*, Carlisle had constructive notice of the 1973 Timber Deed as a matter of law, because that document was recorded in his chain of title.

We agree with the District Court's conclusion. As a matter of law, Carlisle had notice of the 1973 Timber Deed because it was recorded in his chain of title. Moreover, basic common sense dictates that Carlisle was on notice that his 1970 purchase of the Clough Farm land did not include any timber rights, as his agreement with Fisher & Young explicitly excepted any such timber rights. The notable exclusion of timber rights from his purchase should have spurred Carlisle, certainly by the time of filing of *Carlisle I*, to make inquiry as to the actual owner of the timber rights. Such inquiry would have led Carlisle to the recorded 1973 Timber Deed, which was in his chain of title. Additionally, because Carlisle had constructive notice of the 1973 Timber Deed, he can

9

properly be charged with inquiry notice of the 1968 Unrecorded Agreement, as that Agreement was explicitly referenced in the 1973 Timber Deed.  Carlisle's constructive or inquiry notice of the 1968 Unrecorded Agreement and 1973 Timber Deed thus renders any claims stemming from these documents as barred by *res judicata*, as such claims could have and should have been brought in *Carlisle I*.  *Avins v. Moll*, 610 F. Supp. at 324-25.

Carlisle also argues that the District Court erred in dismissing Carlisle's claim regarding the 2003 Quitclaim Deed as barred by the doctrine of *res judicata*.  Carlisle misconstrues the District Court's decision. The District Court did not rule that the claim relating to the Quitclaim Deed was barred by *res judicata*.  Rather, the District Court explicitly held that the claim regarding the validity of the Quitclaim Deed remained viable, but dismissed that claim for jurisdictional reasons discussed below.  Accordingly, we find no error in the District Court's conclusion that the claims in this action relating to the question of ultimate ownership of the Clough Farm and its timber rights, including those claims premised on the 1968 Unrecorded Agreement and the 1973 Timber Deed, are barred by the doctrine of *res judicata* as claims that could have been brought in the prior action.

III.

With respect to the District Court's decision to dismiss Carlisle's remaining claims premised on the 2003 Quitclaim Deed for failure to satisfy the jurisdictional amount, we

exercise plenary review over questions of subject matter jurisdiction. *Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1044 (3d Cir. 1993).

After dismissing the bulk of Carlisle's claims in this action as barred by *res judicata*, the District Court noted that its jurisdiction was questionable with respect to the remaining claim regarding the alleged cloud on Carlisle's title to the Clough Farm caused by the issuance of the 2003 Quitclaim Deed. The District Court found that the alleged cloud on title could only have an effect on Carlisle's ownership of timber that sprouted on the Clough Farm after 1969. In doing so, the District Court recognized that it was undisputed that Carlisle owned the Clough Farm land (as opposed to timber) outright, so the value of the land was not part of the calculus. Furthermore, the rights to pre-1969 timber had been adjudicated in *Carlisle I* in favor of Matson. Because there was no allegation in the Complaint or evidence before the court regarding the value of the post-1969 Clough Farm timber, the District Court had no basis for deciding whether the Quitclaim Deed claim satisfied the jurisdictional amount.

To resolve this issue, the District Court ordered an evidentiary hearing to assess the value of the post-1969 timber on the Clough Farm. That hearing resulted in testimony from Carlisle's expert that the present value of the timber was approximately $4,200.[3] In

---

[3] Carlisle's expert had originally submitted a future-value analysis of the post-1969 timber, valuing the timber at $3.5 million in 50 years, and an investment analysis premised on the amount of money that would have to be invested today to match the projected value of the timber in 50 years ($388,050). The District Court correctly rejected those valuations as irrelevant, because an analysis of the jurisdictional amount in controversy is limited to the present value of the property at issue at the time of the filing

light of this evidence that Carlisle's claims regarding the Quitclaim Deed fell far short of the jurisdictional threshold, the District Court determined that those claims could not satisfy the diversity jurisdiction amount in controversy, and would be dismissed without prejudice to their reassertion in a state forum. In so ruling, the District Court determined that Carlisle's original allegations in the Complaint as to the satisfaction of the amount in controversy were made in bad faith, as they were based upon Carlisle's unreasonable inclusion of claims that were previously adjudicated, and therefore barred by the doctrine of *res judicata*, as well as the 2003 Quitclaim Deed claim, which fell far short of the jurisdictional threshold.

    We note that, as a general rule, the amount in controversy is determined as of the time the complaint is filed, and that once a federal court finds that it has diversity jurisdiction, subsequent events cannot divest the court of jurisdiction. *Newman-Green Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989). However, as noted by the District Court, exceptions to this rule exist, which allow courts to look beyond the allegations of the complaint in situations where a plaintiff has claimed satisfaction of the jurisdictional amount in bad faith, or when subsequent events reveal that the amount actually in controversy at the time of filing was less than the threshold amount. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (hereinafter "*Red Cab*") (holding that "[t]he rule governing dismissal for want of jurisdiction in cases brought in the federal

---

of the Complaint, not the future value or the investment value of such property. *Kelly v. Lehigh Nav. Coal Co.*, 151 F.2d 743, 746 (3d Cir. 1945).

court is that . . . the sum claimed by the plaintiff controls *if the claim is apparently made in good faith*") (emphasis supplied); *id.* at 289 (holding that "if, from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover" the amount claimed for purposes of conferring jurisdiction, "the suit will be dismissed").

The District Court premised its finding of bad faith on the following evidence of Carlisle's unreasonableness in including "non-justiciable claims" in the Complaint in order to satisfy the amount in controversy requirement:

> [F]irst, the majority of the claims were already actually litigated to verdict in this very court, or should have been because they dealt with the same issue of ownership of the Clough Farm timber; second, a state court had already rebuffed plaintiff's attempt to relitigate ownership of the Clough Farm timber based on the doctrine of *res judicata* due to the earlier federal case; third, many of the allegations of the complaint directly contradicted evidence and arguments that plaintiff presented to this court during the prior federal court case; fourth, the case was not based on any new documents or evidence, other than the 2003 timber deed, which is the basis of the surviving quiet title action; and, fifth, the requested judgment would be contrary to the judgment entered by this court in the prior federal case.

(App. at 25.)

The District Court noted that it "could have dismissed the entire case" based on Carlisle's bad faith in reasserting previously-litigated claims, but gave Carlisle the opportunity to prove that his remaining claims regarding the Quitclaim Deed would satisfy the jurisdictional amount in controversy. Based on the evidence submitted at the hearing, Carlisle could not so prove. Carlisle's expert admitted that the post-1969 timber on the Clough Farm property had a present value of less than $5,000. Thus, the District

13

Court correctly concluded that it was "a legal certainty" that Carlisle was never entitled to recover an amount exceeding $75,000, despite the allegations of the Complaint.

Carlisle argues that the District Court's decision to dismiss the bulk of Carlisle's claims pursuant to the doctrine of *res judicata* was a "subsequent event" that may not be considered in analyzing original jurisdiction. However, the case law indicates otherwise. The District Court's determination regarding the validity of a plaintiff's claims *as of the time of filing of the complaint* is not a "subsequent event"; rather, it is the kind of determination that courts are explicitly permitted, if not encouraged, to rely upon when questioning the jurisdictional basis for a suit. In *State Farm Mutual Automobile Insurance Co. v. Powell*, 87 F.3d 93 (3d Cir. 1996), this Court considered the impact of the District Court's realization that, of three insurance policies claimed to be applicable in the Complaint, only two were actually valid. This Court deemed this discovery to constitute a post-filing "revelation" regarding the status and validity of the claims in the Complaint at the time of filing, and thus distinguished the revelation from a "subsequent event" that altered the amount of a plaintiff's potential recovery:

> It is true that a federal court's jurisdiction ordinarily depends upon "the facts as they exist when the complaint is filed," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830, 104 L. Ed. 2d 893, 109 S. Ct. 2218 (1989), and thus subsequent events that reduce the amount in controversy below the statutory minimum do not require dismissal. *See Jones v. Knox Exploration Corp.*, 2 F.3d 181, 182-83 (6th Cir. 1993). However, "[a] distinction must be made . . . between subsequent events that change the amount in controversy and subsequent revelations that, in fact, the required amount was or was not in controversy at the commencement of the action." *Id.* at 183

14

(emphasis added).

*State Farm*, 87 F.3d at 97. Thus, this Court held that "the discovery that one of the original three policies was not in effect during Powell's accident should be considered a revelation that only two policies were at issue when the litigation was commenced, not a 'subsequent event.'" *Id.*

The Supreme Court in *Red Cab* has endorsed, if not explicitly mandated, the practice of considering post-filing revelations of the invalidity of claims at the time of filing when examining an action's jurisdictional basis:

> In a cause instituted in the federal court the plaintiff chooses his forum. He knows or should know whether his claim is within the statutory requirement as to amount. His good faith in choosing the federal forum is open to challenge not only by resort to the face of his complaint, but by the facts disclosed at trial, and if from either source it is clear that his claim never could have amounted to the sum necessary to give jurisdiction there is no injustice in dismissing the suit. Indeed, this is the court's duty under the Act of 1875.

*Red Cab*, 303 U.S. at 290.

In light of these precedents, the District Court committed no error in finding that Carlisle had inflated the value of his claims in this action by asserting non-justiciable claims in bad faith. Moreover, even without such a finding of bad faith, the District Court could have dismissed the action based upon the fact that the recognition of the invalidity of the bulk of Carlisle's Complaint under the *res judicata* doctrine served as a "revelation" that the Complaint asserted more damages than could be validly claimed, and the evidentiary hearing revealed that the actual amount in controversy at the time of the filing of the Complaint did

not meet the jurisdictional threshold. For the foregoing reasons, we will affirm the District Court's dismissal of the action.